J-S95015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARNELL RAY LEWIS, JR. | |
| Appellant | No. 1377 EDA 2016 |

Appeal from the PCRA Order Entered April 4, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No: CP-39-CR-0005370-2012

BEFORE:  STABILE, MOULTON, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                **FILED MARCH 21, 2017**

Appellant, Darnell Ray Lewis, Jr., appeals *pro se* from the April 4, 2016 order dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  We affirm.

The underlying facts are as follows:

On the morning of October 18, 2011, Barbara Hausknect [("Hausknect")] left her home in Allentown, Pennsylvania and travelled by foot to the Taco Bell located on Route 145, Whitehall, Lehigh County, Pennsylvania to get her paycheck. Hausknect was with her friend, Jeremiah "J.J." Carasquilla ("Carasquilla").  From Taco Bell, the two walked further north on Route 145 to the Walmart Superstore.  The two shopped at Walmart for approximately 30 to 45 minutes.  While there, Hausknect selected a few items and proceeded to the checkout lane.  There, she signed over her paycheck to pay for her selected items and obtained the remainder of the money owed to her.  Hausknect put the additional money, totaling approximately $500[.00], into her black wristlet wallet.  Hausknect and Carasquilla exited through the doors and walked to their left.

While speaking to her friend, Hausknect noticed [Appellant] pacing nearby and [Ferante Troutman ("Troutman")] approximately [five] feet away. The individuals made her nervous and they continued to walk in front of Hausknect and Carasquilla. [Appellant], wearing a red long-sleeved shirt, gray sweatshirt, jeans[,] and a black hat, approached Hausknect and asked her for a cigarette. Hausknect replied that she did not have one. [Appellant] then asked for a lighter and Hausknect handed Carasquilla matches to give to [Appellant]. [Appellant] and Carasquilla were now behind Hausknect. [Appellant] then approached Hausknect from behind and asked for her money. She replied "Hell, no" and continued to walk away. [Appellant] then asked her for her wallet, and she again replied, "No."

After Hausknect refused to give [Appellant] the wallet, [Appellant] pulled out a gun and pointed it at her. [Appellant] grabbed at Hausknect and tried to take her wallet from her left hand. Hausknect struggled with [Appellant]. As Hausknect attempted to run away from [Appellant], she was shot directly in her back. After she fell to the ground, [Troutman] held Hausknect down and [Appellant] hit her in the mouth with the gun, cutting her below her nose and damaging her teeth. The individuals got her wallet and got into a silver or blue vehicle. [...]

Immediately, people from nearby stores came to Hausknect's aid. They applied pressure to her wound and attempted to calm her down. At approximately 12:30 p.m., members of the Whitehall Township Police Department arrived on scene. Patrolman Derrick Williams observed several people flagging him down and found [] Hausknect lying on the ground. Patrolman Williams spoke to the victim and attempted to get a description of the perpetrator(s) and the vehicle involved. Carasquilla, who had initially run when [Appellant] pulled out the gun, returned to Hausknect's location and related that the two black males involved ran to a blue vehicle and fled the area. Patrolman Williams observed blood pulsing out of the victim's back and blood in her mouth area. He directed her to stop attempting to move and determined that she was traumatized and in shock. [Hausknect] ultimately left by ambulance and was taken to Lehigh Valley Hospital for immediate surgery. During the surgery, a bullet was retrieved from [Hausknect]'s back and was taken into evidence.

[***]

On October 18, 2011, [Tymesha] McKenzie [("McKenzie"), Appellant's co-defendant,] received a phone call from [Appellant] and Troutman, asking her to give them a ride. She and her then [two] year old son picked the two men up in Allentown and proceeded to the Walmart in Whitehall. She was driving a blue Chevrolet Cobalt bearing a license plate from the State of North Carolina. [Appellant] was seated in the front passenger seat and Troutman and the minor child were in the back seat. McKenzie parked her vehicle in the parking lot while Troutman and [Appellant] went inside the Walmart. [Appellant] was wearing a red shirt and Troutman was wearing a gray shirt.

Shortly thereafter, the two men emerged from the Walmart, without any bags or packages. They reentered McKenzie's vehicle. [Appellant] took out a silver "cowboy style" gun, placed it on his lap, and instructed McKenzie to drive. One of the men instructed her to stop the vehicle when they noticed Hausknect walking in the parking lot. [Appellant], still possessing the gun, walked in Hausknect's direction, with Troutman a small distance behind [Appellant]. McKenzie watched their interaction with Hausknect from the side window of her vehicle. She saw [Appellant] point the gun at Hausknect and saw her fall, although she did not actually hear any shots.

Once Hausknect fell to the ground, McKenzie saw Troutman take her wallet and both men returned to McKenzie's vehicle. When McKenzie asked [Appellant] if he shot Hausknect, [Appellant] replied that he had to because she wasn't going to give him her wallet. McKenzie, Troutman, and [Appellant] left the area. While driving back to Allentown, [Appellant] removed the money from the [wallet] and threw the wallet out[of] the window.

[***]

Dr. [Michael] Badellino testified that the area where [Hausknect] was shot was a critical part of the body in that it receives secretions of the pancreas and processes bile from the liver.

***Commonwealth v. Lewis***, 2968 EDA 2013 (Pa. Super. Filed August 13, 2014), unpublished memorandum at 1-4 (quoting Trial Court Opinion, 11/5/13, at 3-7).

On January 5, 2012, the Commonwealth charged Appellant with attempted homicide, robbery, aggravated assault, theft by unlawful taking, receiving stolen property, and conspiracy.[1] A bench trial commenced on July 29, 2013, and the trial court found Appellant guilty of all charges on July 31, 2013. On September 9, 2013, the trial court imposed an aggregate thirty to sixty years of incarceration. This Court affirmed the judgment of sentence on August 13, 2014. ***See id.*** Our Supreme Court denied allowance of appeal on December 16, 2014.

Appellant filed a timely *pro se* PCRA petition on October 8, 2015. The PCRA court appointed counsel on October 12, 2015. On February 22, 2016, counsel filed a no merit letter and petition to withdraw pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On February 29, 2016, the PCRA court filed a notice of intent to dismiss Appellant's petition without a hearing, pursuant to Pa.R.Crim.P. 907. Appellant responded to the Rule 907 notice on March 21, 2016. On April 4, 2016, the PCRA court

---

[1] 18 Pa.C.S.A. §§ 901, 2501, 3701, 2702, 3921, 3925, and 903, respectively.

entered an order denying Appellant's petition and granting counsel's petition to withdraw. This timely *pro se* appeal followed.

Appellant raises six assertions of error:

1. Counsel was ineffective where he failed to obtain an expert witness concerning eyewitness identification.

2. Counsel was ineffective where he failed to present the desired defense requested by [Appellant].

3. The trial court was erroneous in waiving [Appellant's] sufficiency of the evidence claim previously litigated [sic].

4. [Appellant] argues that the evidence was insufficient to convict the petitioner of criminal attempted homicide[.]

5. Did [Appellant's] trial attorney constitute ineffective assistance of counsel where he didn't read and understand the applicable law?

6. Counsel was ineffective for failing to fully litigate sufficiency of the evidence on direct appeal.

Appellant's Brief at 7.[2]

The arguments in Appellant's brief do not align with the six assertions of error. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued [….]"). Assertions of error 1 and 2 appear to relate to counsel's failure to call an expert witness. Assertions of error 3, 4, and 6 relate to Appellant's sufficiency of the evidence argument, and whether appellate counsel rendered ineffective service in his presentation of that issue on direct appeal. Assertion of error

---

[2] Appellant's Brief is not paginated. We have added our own pagination, with page one immediately following the cover page.

5 criticizes trial counsel's defense strategy.  We will address these issues in turn.

On review from a PCRA court's denial of relief, we must determine whether the record supports the court's findings and whether its legal determinations are free from error.  *Commonwealth v. Pitts*, 981 A.2d 875, 878 (Pa. 2009).  Appellant argues trial counsel was ineffective for not offering expert testimony on the victim's identification.  Appellant argues that scientific evidence indicates that identification testimony from a victim who was under attack, and therefore under a great deal of stress, is potentially unreliable.  To establish ineffective assistance of counsel, a PCRA petitioner must plead and prove that the underlying claim is of arguable merit, that counsel had no reasonable strategic basis for the act or omission; and that counsel's mistake prejudiced the petitioner.  *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999).  Further, to succeed on a claim that counsel was ineffective for failing to call a certain witness, the petitioner must show

> (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.

*Commonwealth v. Brown*, 767 A.2d 576, 581–82 (Pa. Super. 2001).  "Thus, trial counsel will not be found ineffective for failing to investigate or call a witness unless there is some showing by the appellant that the

witness's testimony would have been helpful to the defense." *Id.* "A failure to call a witness is not per se ineffective assistance of counsel for such decision usually involves matters of trial strategy." *Id.*

In *Commonwealth v. Walker*, 92 A.3d 766 (Pa. 2014), our Supreme Court removed an absolute prohibition on expert testimony regarding eyewitness identifications.

> We now allow for the possibility that such expert testimony on the limited issue of eyewitness identification as raised in this appeal may be admissible, at the discretion of the trial court, and assuming the expert is qualified, the proffered testimony relevant, and will assist the trier of fact. Of course, the question of the admission of expert testimony turns not only on the state of the science proffered and its relevance in a particular case, but on whether the testimony will assist the jury. Trial courts will exercise their traditional role in using their discretion to weigh the admissibility of such expert testimony on a case-by-case basis. It will be up to the trial court to determine when such expert testimony is appropriate. If the trial court finds that the testimony satisfies *Frye*,[3] the inquiry does not end. The admission must be properly tailored to whether the testimony will focus on particular characteristics of the identification at issue and explain how those characteristics call into question the reliability of the identification. We find the defendant must make an on-the-record detailed proffer to the court, including an explanation of precisely how the expert's testimony is relevant to the eyewitness identifications under consideration and how it will assist the jury in its evaluation. The proof should establish the presence of factors (e.g., stress or differences in race, as between the eyewitness and the defendant) which may be shown to impair the accuracy of eyewitness identification in aspects which are (or to a degree which is) beyond the common understanding of laypersons.

*Commonwealth v. Walker*, 92 A.3d 766, 792 (Pa. 2014).

---

[3] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

Appellant's brief goes on at length about the scientific evidence pertaining to expert evaluation of eyewitness identifications. Appellant does not, however, proffer an expert who would have testified on Appellant's behalf, given the facts of this case. Nor does Appellant attempt to explain why expert testimony would have been helpful to him in this case. As our Supreme Court explained in **Walker**, the admission of expert testimony as to an eyewitness identification is highly dependent on the facts at issue. Appellant has failed to demonstrate that expert testimony was relevant, admissible, and helpful to him in this case. Thus, he cannot demonstrate that counsel was ineffective for failing to call an expert. We reject Appellant's first and second assertions of error as lacking in merit.

Next, Appellant argues that the evidence against him was insufficient, and that appellate counsel was ineffective in presenting a sufficiency of the evidence challenge on direct appeal.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is

circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722–23 (Pa. Super. 2013) (internal citations and quotation marks omitted).

Appellant challenges direct appeal counsel's effectiveness to avoid the previous litigation bar of § 9543(a)(3). On direct appeal, Appellant argued that the Commonwealth failed to produce sufficient evidence that Appellant acted with specific intent to kill. *Lewis*, 2968 EDA 2013, unpublished memorandum at 6. We rejected that argument because the record demonstrated that Appellant filed a gunshot at a vital part of the victim's body. *Id.* at 6-7. Appellant also argued that he shot the victim because she would not turn over her wallet, and not because he intended to kill her. *Id.* at 7. We rejected that argument because it required us to draw an inference in Appellant's favor. *Id.*

Appellant's present argument, while unartful, appears to be precisely the same argument this Court rejected on direct appeal. Appellant argues that "[c]ompetent counsel would have determined that the evidence that [Appellant] had the 'intent to rob' the victim through his actions and conduct." Appellant's Brief at 17. "Competent counsel would have determined that the evidence shown [sic] that [Appellant] could've had the

intent to rob and the chance of having the specific intent to kill was extremely thin." *Id.* at 18. Further, "[t]he use of a deadly weapon directed at a vital organ of another human being justifies a factual presumption that the actor intended death unless the testimony contains additional evidence that would demonstrate a contrary intent." *Id.* at 19. Based on the foregoing, we conclude the PCRA court did not err in treating this argument as previously litigated. Appellant's third, fourth, and sixth assertions of error therefore lack merit.

The sole remaining issue is Appellant's assertion that counsel was ineffective for failing to read and understand the applicable law. This argument appears to be based on Appellant's belief that his sufficiency of the evidence and expert witness arguments were meritorious. *See* Appellant's Brief at 16. Since we have concluded otherwise, we reject this assertion as well.

Having found no merit in any of Appellant's arguments, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2017

- 10 -